Chapman, J.
The plaintiff in its petition charges, and the evidence substantially shows, that the defendant company is about to construct five additional tracks at nearly right angles across Dun-ham road, three additional tracks across Independence road, and *142 to divert Granger road from its present location, each being established county roads lying outside of any municipality, so that there will be seven tracks across Dunham road, the distance between the tracks varying and altogether occupying a space from outside track to outside track along the road of about 300 feet, and six tracks across Independence road, occupying about 200 feet; that no agreement has been made for the laying of such additional tracks across said road with the county commissioners, nor has any right to lay such additional tracks been appropriated.
The claim of the plaintiff is that unless an agreement is reached or such appropriation had, the defendant has no right to occupy any part of these roads with such additional tracks. The defendant claims to have such right without agreement and without appropriation by virtue of the charter provision of its lessor, the Cleveland & Pittsburg Railroad Company, found in the act of 1835 and amendment of 1846, and by Section 3284, Revised Statutes.
So far as the charter provisions of its lessor are concerned, it is sufficient to say that if such provisions are inconsistent with the general provisions of the statutes relating to this subject, it and its lessor have effectually relinquished any such inconsistent rights by availing themselves both of the general provisions of the statutes as to leasing its road, as well as of the provisions as to appropriating private property for their uses. 29 O. S., 1.
So the case stands on the general provisions of the statutes relating to railroads and it is practically conceded that these provisions axe found in Section 3283 and Section 3284, Revised Statutes.
That the county commissioners have the care and control of roads of the character here in question, is also conceded. 56 O. S., 1, at 7.
The franchise or charter of a railroad company to construct, maintain and operate a steam railroad between any given termini, either by express terms or by implication, includes the right to cross roads and streets, as well as other grounds, both public and private. In the present ease the original charter to the C. & P. *143 R. R. Company probably gave the right in express terms, but there is no doubt that if the original charter had not contained the express provision, it would have been contained in the grant by implication. It follows that the defendant would not have to seek its right to cross roads or streets in any of the express provisions of the statutes, but it does not follow that it has this right without limitation or restriction. The contention of the defendant is that this right is subject only to the provision of Section'3284, that the company “shall .without unnecessary delay place such road in such condition as not to impair its former usefulness.” If defendant’s contention is correct, it may occupy these roads, not only with seven tracks but with any greater number; if it can occupy 300 feet, it may any greater distance, and thus practically effect an abandonment of these roads. For such unlimited right to use and occupy a public highway without any control other than the provision that the company must restore the condition of the road to its former state of usefulness, we should expect to find clear statutory authority.
It is entirely clear that if any of these roads had been within a municipal corporation, the defendant could not construct these additional tracks without consent of the municipal authorities. This is the plain provision of Section 3283, and also the holding of Judge Laubie in 3 C. C., 214. In that ease the judge has attempted to distinguish the application of Section 3283 and Section 3284, confining the former to city streets and the supposed necessities and dangers in a thickly settled community, and the latter to country roads in a sparsely populated district. Such distinction can not have much weight, as anyone can easily call to mind country roads much more traveled than many city streets. The decision, however, of the' cpiestion here presented was not before the judge for determination. He did hold that the provision of Section 3283 applied to the “crossing” by the railroad company of a city street, and so held that the word “occupy” as found in that section, at least so far as a municipality is concerned, included “crossing” as well as extending longitudinally along the highway, and I, have no doubt that the *144 word “occupy” as found in this section is broad enough to include any location of tracks on a road by a railroad company, either by way of crossing at whatever angle, or lengthwise. The only question that could arise is that indicated by Judge Laubie when he says that Section 3284 is confined to country roads, and as a consequence they are excluded from the provisions of 3283, in order to give the latter section a definite object differing from 3284.
The history of these sections may be helpful. The act of February 11th, 1848' (46 O. L., 40), is entitled, “An act regulating railroad companies.” Section 11 of that act is as follows:
“If it shall be necessary in the location of any part of any railroad to occupy any road, street, alley or public way or ground of any kind, or any part thereof, it shall be competent for the municipal or other corporation or public officers or public authorities, owning or having charge thereof, anq[ the railroad company to agree upon the manner, and upon the terms and conditions upon which the same may be used or occupied; and if said parties shall be unable to agree thereon, and it shall be necessary in the judgment of the directors of such railroad company to use or occupy such road, street,. alley or other public way or ground, such company may apply to the court of common pleas of the county in which the same is situate, setting forth the aforesaid facts, and said court shall thereupon appoint at least three judicious disinterested freeholders of the county, who shall proceed to determine whether such occupation is necessary, and, if necessary, the manner and terms upon which the same shall be used, and make return of their doings in the premises to said court, who shall, if they deem the same just and proper, make the necessary order to carry the same into effect, or they may order a review of the same, as such court may consider justice and the public interest require.”
Section 15 reads as follows:
“It shall be lawful for such corporation, whenever it may be necessary in the construction of such road, to cross any road or stream of water, or to divert the same from its present location or bed; but said corporation shall, without unnecessary delay, place such road or stream in such condition' as not to impair its former usefulness.”
*145 Under Section 11, freeholders of the county were to determine the terms and condition upon which the railroad was to occupy any part of a road or street in event of disagreement with the municipal or public officers. The purpose of the act, as indicated by its title, is one of regulation. In other words, the occupation of roads and streets were regulated by Section 11.
The succeeding amendment of this section found in the act of May 1, 1852 (52 O. L., 274), substituted regular appropriation proceedings, and although amended in 1857, the provisions remained substantially the same as in the original act when incorporated in Section 3283, Revised Statutes.
This reference to three judicious freeholders of the county in the original act would seem to give to that section a wider operation than municipal limits, but whether so or not Section 15, just quoted, coming four sections later by its position indicated .that some other subject was in mind to be provided for and of a different nature. Occupying roads or streets was the subject regulated by Section 11. Section 15 regulated diverting roads or streams when necessary to cross the same, and the amendment or revision of Section 15, in the act of 1852, changed the original wording so as to expressly confine it to diverting. Section 15 became Section 16 and by omitting the word “or” became confined to diverting. It read as follows:
“It shall be lawful for such corporation, whenever it may be necessary in the construction of such road to cross any road or stream of water, to divert the same from its present location or bed,” etc.
But the codifiers in reviewing the sections omitted the word “to” before the word “divert” in Section 3284 and seem to have left the section open to a construction that crossing, as well as diverting; is provided for.
The plain language of the act prior to the codification confined the section to diverting a road or stream, and the change made by the codifiers should not change the construction (36 O. S., 326)., As the seetions-stood in the act of 1852, they applied to different subjects and were entirely harmonious and each could be given full and complete operation. The word “road” as *146 used in Section 3283 appears in tbe original act, through all amendments and in the codification. This word “road” has a precise and definite meaning throughout Ohio law and, to hold that Section 3283 applies only to municipalities, one must entirely ignore its use in this section. The words ‘ ‘ public officer ’ ’ found in Section 3283 include the county commissioners (56 O. S., 1). And as we have seen, the word “occupy” has been held to include crossing.
The application of the provisions of Section 3283 would seem to be pertinent to the situation here before us. To give the construction contended for by defendant to these sections ignores all canons of construction' — that language shall be deemed used in its ordinary sense, unless shown by the context to be used otherwise. It further requires ignoring the history of the sections and their purpose. It requires by ingenious construction the elimination of county roads from the provisions of Section 3283, in order that a railroad company may be without control or limitation as to laying any number of tracks across such roads, other than contained in the provisions of Section 3284, but if one gives these sections the construction that I think their history’indicates, the occupancy of roads as well -as streets is fully provided for by Section 3283, whether the occupancy is across or longitudinal, and Section 3284 regulates the diverting of roads or streams, and limits the authority of the public authorities so as to at least require placing the road in its former condition of usefulness. These sections have been under discussion in various cases decided in Ohio, but none involved the precise question here, and in none of them, other than 3 C. C., 214, has the origin of the section been considered.
It is to be observed that both the circuit court, 15 C. C., 242, and the Supreme Court in 37 O. S., 205, hold that a contract made with the county commissioners as to crossing roads is valid and enforceable. It will not do to say that the eases hold that such contract is valid only to the extent of requiring the road to be placed in its former condition of usefulness. If these cases recognize the power to contract, which they do, then there must be power conferred on the commissioners to fix the terms *147 of the contract, otherwise the power to contract is without significance. It is the same as to say that you may make a contract, but the only contract you can make is limited and bounded to the one thing that the road must be placed in its former condition of usefulness. This is to reduce the power to contract to an absurdity. But it is further to be observed that Section 3284 does not confer power on the commissioners to contract at all, while Section 3283 does confer such power, and if the commissioners should make a contract with reference to a crossing of a road, such contract, as a contract, would be unenforceable because of the absence of power of commissioners to make it, and because of want of consideration. The right of the commissioners under such circumstances would be confined to enforcing a statutory duty on the part of the railroads, as in 36 O. S., 434. It therefore seems to me that these decisions fully recognize the power of the commissioners to make a contract and to fix its terms, and this power is conferred only under Section 3283.
In 56 O. S., 1, at page 8, Minshall, J., says:
“To illustrate: By articles of incorporation a railway company is empowered to locate and construct a railroad between its termini. But the power so conferred is subject to the duty of making compensation to the owner for private property taken; and of agreeing with the county commissioners as to the use and occupancy of public highways under their control. Section 3283, Revised Statutes.”
This, as I understand it, is the correct statement of law. It recognizes that neither Sections 3283 nor 3284 confer the right to cross a road or street, but such right is conferred by the charter, and that these sections are for the purpose of regulating the right, as is said in the title of the original act of 1848. To say that this quotation from the decision of Minshall, J., applies to longitudinal occupation of a road and not- a crossing of a road, is to say that a crossing of a highway in a municipality is unprovided for, and this Laubie, J., has said in 3 C. 0., 214, is provided for by Section 3283 and that the word “occupy” includes crossing.
Further, I see no reason to attribute to the Legislature the purpose of conferring upon a railroad company the unrestrained *148 and unlimited right to cross a country road, however much used by the traveling public, with as many tracks as it sees fit, subject only to the provision that it shall place such road in its former condition of usefulness. In the. absence of clear statutory provision, permitting such right, the court does not feel that it should adopt such construction as to produce such result. It must be the duty of the court to adopt such construction as will protect the public interests and not leave such interest to be safeguarded by the private interest of a railroad company.
W. H. Boyd, for plaintiff.
Squire, Sanders c§ Dempsey, for defendant.
The construction I have indicated safeguards the rights of both the public as well as the railroad. In event of disagreement with the commissioners, the railroad can secure the right by appropriation, and this seems just as reasonable and proper without as within a municipality. This leaves Section 3284 its proper application to diverting roads and streams as was the clear wording of the section in the act of 1852.
The prayer of the petition will be granted in this form as the decree in favor of the plaintiff, restraining the defendant from occupying those roads with additional tracks, subject to the right of defendant to contract with the commissioners, or, failing to so agree, appropriation; and the decree may be drawn by counsel.